**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a) Pennsylvania Company, )<br><br>Plaintiff, )<br><br>vs. )<br><br>VALERIE A. KEMPER; JOHN DOE) KEMPER, )<br><br>Defendants. )<br> ) | No. CV-07-1149-PHX-GMS<br>No. CV-07-1520-PHX-GMS<br>(Consolidated)<br><br>**ORDER** |

Pending before the Court is the Motion for Reconsideration of Plaintiff American Casualty Company of Reading, Pennsylvania ("American Casualty"). (Dkt. # 47.) This Court previously denied the motion upon receipt of Defendant's response (Dkt. # 58), but the Court has since vacated that denial and permitted Plaintiff to file a reply under Local Rule 7.2(g)(2) (Dkt. # 65). For the following reasons, the Court denies the motion.

## BACKGROUND

This case derives from prior litigation between Defendant Valerie Kemper and Kathleen Bynum, a clinical/rehabilitation counselor, who was insured by American Casualty for professional and workplace liability. In the prior lawsuit, Kemper brought breach of contract and defamation claims (among others) against Bynum, who had provided counseling services as an independent contractor at West Valley Psychological Services, which is owned

and operated by Kemper. The parties eventually settled the case. In exchange for not recording or executing judgment against Bynum, the parties agreed that Kemper was entitled to a damage award. In lieu of paying the damage award, however, Bynum agreed to assign her rights and claims under the American Casualty insurance policy to Kemper.

After Kemper settled with Bynum, American Casualty commenced the instant litigation, seeking a declaratory judgment that it was not required under the policy to defend or indemnify Bynum. The case was eventually assigned to another judge in this District, Judge Carroll, and American Casualty filed a motion for summary judgment on the issue of policy coverage.[1] (Dkt. ## 24, 25.) American Casualty argued that Bynum's conduct was not covered because the alleged defamatory acts "focused on billing practices and procedures, administrative issues, and the business relationship [between Bynum and Kemper]," and thus were not within the required scope of "professional services" for a "clinical/rehabilitation counselor." (Dkt. # 24 at 2; *see also id.* at 10-16.)[2]

On July 16, 2008, Judge Carroll denied American Casualty's motion for summary judgment, finding that Bynum's alleged defamatory acts were covered conduct because they fell within the ambit of "professional services" as defined in the insurance policy.[3] (Dkt. #

---

[1]This case was consolidated with Kemper's suit against American Casualty alleging breach of contract and breach of the duty of good faith and fair dealing. (*See* Dkt. # 19.)

[2]American Casualty also argued that summary judgment should be granted because Bynum's conduct fell within the policy's intentional act exclusion. (Dkt. # 24 at 16-17.) The Court rejected that argument and determined that questions of material fact remained as to whether coverage was excluded under the intentional act exclusion. Thus, summary judgment on the coverage issue as a whole was inappropriate. (Dkt. # 28 at 12-13.) American Casualty has not disputed that finding in its motion for reconsideration.

[3]"Professional Services" was defined in the policy as:

> those services for which you are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the certificate of insurance and which you perform as, or on behalf of, the named

28 at 6-11.) Specifically, Judge Carroll concluded that the policy should be construed against American Casualty because it is ambiguous. Judge Carroll first explained that the policy covered "services for which [the insured is] licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession[]." (*Id.* at 10 (quoting Dkt. # 25 Ex. 1 Doc. 2 at 5).) Judge Carroll concluded that "[t]he [Arizona Board of Behavioral Health Examiners ("ABBHE")] is the regulatory agency in this circumstance and it may arguably be inferred that the scope of practice includes the professional standards with which the ABBHE must ensure compliance[.]" (*Id.*) Judge Carroll reasoned:

> The Policy does not limit its definition of professional services to services "rendered," nor does it limit coverage to misconduct between Bynum and her patients. Nor is there any indication that Bynum reasonably expected the Policy to so limit the coverage. It appears to cover actions as a member of a board or committee, but whether she must be a committee or board member to be covered for conduct while complying with any board directives, as the last clause indicates, is not clear. In other words, the language is ambiguous. As already noted, ambiguity is construed against the insurer as the drafter of the contract . . . .
>
> . . . Bynum allegedly defamed Kemper when she attempted to preserve her provider status with various health care providers, and later, to preserve her license to practice at all, when the ABBHE threatened to rescind the license if Bynum did not comply with its directives. These alleged acts cannot be characterized as merely routine or ministerial. Nor can they be described as part of Bynum's work in a different professional capacity. The alleged defamatory acts are in fact intertwined with her professional services as a counselor.

(*Id.* at 10-11.) Thus, Judge Carroll concluded that "Bynum's alleged defamatory acts fall within the ambit of 'professional services' as defined by the Policy, and is covered conduct."

---

> insured. Professional services also means your services while acting in the profession(s) shown on the certificate of insurance as a member of a formal accreditation, standards review, or similar professional board or committee, including the directives of such board or committee.

(Dkt. # 25 Ex. 1 Doc. 2 at 5 (emphases omitted).)

(*Id.* at 13.)  Judge Carroll did not determine whether the intentional acts exclusion was nevertheless applicable.

On September 4, 2008, this case was transferred to the undersigned, who was newly-appointed to this District, as part of his initial caseload.  Soon thereafter, American Casualty filed a motion for clarification, asking this Court to find that Judge Carroll had not intended to include all defamatory acts within his finding that Bynum's alleged defamatory acts fell within the ambit of "professional services." (Dkt. # 30.)  The Court denied the motion.  (Dkt. # 31.)  American Casualty then filed the instant motion for reconsideration.  (Dkt. # 47.)

**DISCUSSION**

**I.    Legal Standard**

A district court can "reconsider" final judgments or appealable interlocutory orders pursuant to Federal Rules of Civil Procedure 59(e) (governing motions to alter or amend judgments) and 60(b) (governing motions for relief from a final judgment).  *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1989).  A district court can "reconsider" non-final judgments pursuant to Federal Rule of Civil Procedure 54(b) and pursuant to the court's "inherent power rooted firmly in the common law" to "rescind an interlocutory order over which it has jurisdiction." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).

However, "[m]otions to reconsider are appropriate only in rare circumstances," *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995), and "[m]ere disagreement with a previous order is an insufficient basis for reconsideration," *Ross v. Arpaio*, No. CV 05-4177, 2008 WL 1776502, at *2 (D. Ariz. Apr. 15, 2008).  Such motions "are not the place for parties to make new arguments not raised in their original briefs." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).  Similarly, "[a] motion for reconsideration should not be used to ask a court to rethink what the court had already thought through – rightly or wrongly.  Arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Id.* (internal citations and quotations omitted).

As a general principle, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, if a party seeks to base a motion for reconsideration on newly-discovered evidence, the party must also show that "at the time of the Court's decision, the party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence[.]" *Motorola*, 215 F.R.D. at 586.

Under the specific rules of this District, "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). "Any such motion shall point out with specificity . . . any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier . . . ." *Id.* "Failure to comply with this subsection may be grounds for denial of the motion." *Id.*

## II.     Analysis

In its motion for reconsideration, American Casualty states that it has now taken several depositions, including those of Kemper and Bynum, and "[a]t these depositions, Plaintiff learned, for the first time, that Kathleen Bynum expected her insurance coverage for 'professional services' to be limited to services rendered to patients." (Dkt. # 47 at 1.) American Casualty argues that "a second look at the coverage issue is now appropriate" given the new facts at issue. (*Id.* at 2.) Specifically, American Casualty argues that because Bynum had the reasonable expectation that policy coverage would be limited to services rendered to patients, the alleged defamatory acts fall outside the scope of "professional services" as that term is used in the insurance policy.

However, these newly-discovered[4] facts do not require overturning Judge Carroll's ruling. First, the doctrine of reasonable expectations does not apply in these circumstances. The doctrine exists to extend coverage to an insured where boilerplate terms that would deny coverage are either incomprehensible to a reasonable person or are contradicted by actions that would create a reasonable impression of coverage. *See Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 632, 886 P.2d 1381, 1388 (Ct. App. 1994) ("Under the reasonable expectations doctrine, boilerplate policy terms are void if they 'cannot be understood by the reasonably intelligent consumer' or if the insurer's actions 'create an objective impression of coverage in the mind of a reasonable insured.'") (quoting *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272-73, 742 P.2d 277, 283-84 (1987)); *Am. Family Mut. Ins. Co. v. White*, 204 Ariz. 500, 506, 65 P.3d 449, 455 (Ct. App. 2003) ("A court may apply the reasonable expectations doctrine when a reasonably intelligent consumer cannot understand the policy language; when an insured does not receive full and adequate notice and the provision is unusual, unexpected, or emasculates apparent coverage; when some activity reasonably attributable to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or when some activity reasonably attributable to the insurer has induced an insured to reasonably believe that coverage exists, although the policy clearly denies such coverage."). American Casualty cites no authority for the proposition that the doctrine of reasonable expectations can be used to deny coverage that would otherwise be granted in circumstances such as these, nor is the Court aware of any case in which the doctrine has been so employed. American Casualty has therefore failed to meet its burden of convincing the Court that reconsideration is appropriate.

Second, American Casualty's contention that "the Court must have placed great weight on [Bynum's] subjective reasonable expectations of coverage" is unpersuasive. (Dkt.

---

[4]There was apparently a stipulation between the parties that they would not conduct these depositions until after briefing the coverage issue. The Court will assume, without deciding, that based on such a stipulation American Casualty "could not have known of the [newly-discovered facts] through reasonable diligence[.]" *Motorola*, 215 F.R.D. at 586.

# 66 at 6.) Neither party discussed the issue in their original briefing of the motions for summary judgment (*see* Dkt. ## 24-27), and Judge Carroll merely made a passing reference to reasonable expectations in one paragraph of his order (Dkt. # 28 at 10). Judge Carroll cited no law and offered no analysis on the subject, and there is nothing to suggest that Judge Carroll's conclusion that the policy is ambiguous would have changed had he known of the testimony on which American Casualty now relies. Judge Carroll instead relied on the fact that the policy covered "services for which [the insured is] licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession[]" (*id.* (quoting Dkt. # 25 Ex. 1 Doc. 2 at 5)), which he concluded covered the alleged defamatory acts. American Casualty advances no new facts undermining Judge Carroll's reasoning in this regard.

Finally, even if the reasonable expectations doctrine did apply, and even if Judge Carroll applied it, the new evidence on Bynum's subjective beliefs would not afford American Casualty relief. The doctrine of reasonable expectations is an objective inquiry, not a subjective one. *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ct. App. 1990) (holding that under the doctrine of reasonable expectations, "a plaintiff's expectation of coverage must be objectively reasonable"); *see also White*, 204 Ariz. at 506-07, 65 P.3d at 455-56 (explaining the objective nature of the inquiry). Thus, evidence of these witnesses' subjective beliefs would not resolve the reasonable expectations inquiry. Rather, Judge Carroll's statement that there was no indication that Bynum "reasonably" had an expectation that the policy limited coverage, which is an objective conclusion, would still be controlling. (Dkt. # 28 at 10.) American Casualty does not argue for reconsideration of this conclusion, and thus the Court lacks occasion to reconsider Judge Carroll's order.[5]

---

[5]American Casualty also suggests in several places that Judge Carroll's reasoning was incorrect. However, as noted, "[a] motion for reconsideration should not be used to ask a court to rethink what the court had already thought through – rightly or wrongly. Arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Motorola*, 215 F.R.D. at 582 (internal citations and quotations omitted). The Court therefore has no basis on which to reconsider Judge Carroll's reasoning.

1

## CONCLUSION

2      Even assuming that American Casualty could not have discovered the evidence on

3 which it now relies, such evidence would not undermine Judge Carroll's prior ruling.

4      **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration (Dkt.

5 # 47) is **DENIED**.

6      DATED this 12th day of June, 2009.

7

8

_____

G. Murray Snow

9                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28